NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 28 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| OWLINK TECHNOLOGY, INC., a California corporation,<br><br>        Plaintiff - Appellee,<br><br>  v.<br><br>CYPRESS TECHNOLOGY CO., LTD., a foreign corporation,<br><br>        Defendant - Appellant. | No. 23-4314<br><br>D.C. No.<br>8:21-cv-00717-SPG-KES<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Sherilyn Peace Garnett, District Judge, Presiding

Argued and Submitted February 13, 2025
Honolulu, Hawaii

Before: S.R. THOMAS, BRESS, and DE ALBA, Circuit Judges.
Dissent by Judge DE ALBA

     Cypress Technology Co., Ltd. ("Cypress") appeals the district court's denial

of Cypress's motions for renewed judgment as a matter of law and for a new trial

or remittitur after a jury verdict in favor of OWLink Technology, Inc. ("OWLink")

in a breach of contract suit. Cypress argues that the Exclusive Business

---

     [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Management Agreement ("EBMA") it executed with OWLink was validly terminated as a matter of law. Cypress contends that the district court erred by submitting the termination issue to the jury and the error warrants a new trial on both liability and damages.

"A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). However, whether an ambiguity exists in a contract is a question of law that we review independently on appeal. *See F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 962–63 (9th Cir. 2010). We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the ruling of the district court, vacate the judgment against Cypress, and remand this matter to the district court for a new trial. The district court shall determine the scope of that new trial.[1]

Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. "If a contract is reduced to writing, 'the intention of the parties is to be ascertained from the writing

---

[1] Given our holding, we do not address Cypress's other claims, including as to the jury instruction on incorporation by reference.

alone . . . .'" *Block v. eBay, Inc.*, 747 F.3d 1135, 1138 (9th Cir. 2014) (quoting

Cal. Civ. Code § 1639); *see also* Cal. Civ. Code § 1638 ("The language of a

contract is to govern its interpretation, if the language is clear and explicit, and

does not involve an absurdity"). "[T]he ultimate inquiry is what was the parties'

'objective intent, as evidenced by the words of the contract.'" *DiCarlo v.

MoneyLion, Inc.*, 988 F.3d 1148, 1157 (9th Cir. 2021) (quoting *Reilly v. Inquest

Tech., Inc.*, 160 Cal. Rptr. 3d 236, 249 (Ct. App. 2013)). "The Agreement must be

read as a whole, 'so as to give effect to every part.'" *Id.* (quoting Cal. Civ. Code §

1641).

"It is not the parties' subjective intent that matters, but rather their objective

intent, as evidenced by the words of the contract." *Block*, 747 F.3d at 1138

(quoting *Reilly*, 160 Cal. Rptr. 3d at 249). Extrinsic evidence may be introduced

"to construe a contract only when its language is ambiguous," and a trial court's

"determination of whether an ambiguity exists remains 'a question of law, subject

to independent review on appeal.'" *F.B.T. Prods., LLC*, 621 F.3d at 963 (quoting

*Wolf v. Superior Court*, 8 Cal. Rptr. 3d 649, 656 (Ct. App. 2004)).

The EBMA featured several termination provisions. Pursuant to section 7.1

of the agreement, the EMBA would terminate upon termination of another

contract, known as the "ODM Contract." The EBMA defined the "ODM

Contract" as "the Crestron Standard Terms and Conditions for Purpose of Products

3                                              23-4314

and Services between Crestron and Cypress." "Crestron" refers to Crestron Electronics, Inc., a third party. In 2014, OWLink and Cypress signed the EBMA. Cypress and Crestron signed an agreement entitled Crestron Modified Terms and Conditions for Purchase of Products and Services ("2014 agreement") a few days later. Though titled slightly differently, the three companies for the next few years treated the 2014 agreement as the "ODM Contract" referred to in the EBMA. Then, in 2020, Crestron terminated the 2014 agreement and entered into a new agreement ("2020 agreement") with Cypress 60 seconds later.

The EBMA was clear that a termination of the "ODM Contract" would terminate the EBMA, and here the "ODM Contract" was terminated. While there are other provisions in the EBMA that prohibited Cypress from "negotiating a new direct pricing structure with Crestron," the issue here is not the fact of these prohibitions but the remedy for breaching them. Setting aside any claimed breach of the duty of good faith and fair dealing, which is not before us, through section 7.5 of the EBMA, the parties effectively agreed to cap contractual damages to two years' worth of the value of the EBMA to OWLink, following termination of the "ODM Contract." OWLink is thus not "defenseless" to Cypress and Crestron cutting it out of the relationship, because under section 7.5, OWLink can recover two years' worth of damages in this circumstance. And whether the relationship between Cypress and Crestron stopped for a minute or a year, the fact remains that

the termination of the "ODM Contract" was enough to terminate the EBMA.  The EBMA did not impose any conditions on such a termination.

OWLink attempts to circumvent the plain language of the EBMA by arguing that the "ODM Contract" instead "referred to whatever version of the [terms and conditions] governed Cypress and Creston's ongoing business dealings at any given time."  By this logic, the phrase "ODM Contract" encompasses the 2020 agreement between Cypress and Crestron, which, if true, would mean that there was never a termination under section 7.1 of the EBMA, because the relationship between Cypress and Crestron continued.

However, the terms of the EBMA referred to a single agreement, and the only extant agreement at the time of the execution of the EBMA was the 2014 agreement between Cypress and Crestron.  The phrase "ODM Contract" may include amendments to the 2014 agreement but, at the very least, what "ODM Contract" does not refer to is any agreement between Cypress and Creston that is made *after* a termination.  A "termination" necessarily ends whatever agreement is contemplated by the reference to "ODM Contract."  "Termination" places the parties in a post-termination world, with post-termination remedies.  The 2020 agreement does not mean the EBMA carries on as usual, as OWLink contends, because termination of the 2014 agreement is a formal event that carries formal consequences under the EBMA.  To the extent OWLink's president, Paul Tzeng,

had a different subjective understanding, that is irrelevant.  The parties treating the amendments to the 2014 agreement as part of the "ODM Contract" referred to in the EBMA is likewise irrelevant because these amendments were, by definition, not a termination of the 2014 agreement.  Therefore, the extrinsic evidence OWLink presented did not create an ambiguity in the EBMA.

Though we vacate the judgment against Cypress, we leave it to the district court to determine the scope of the new trial in the first instance.  *See Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931).

**REVERSED, VACATED, AND REMANDED.**



*OWLink Tech., Inc. v. Cypress Tech. Co., LTD.*, No. 23-4314

DE ALBA, Circuit Judge, dissenting:

I agree that my colleagues' interpretation of the Exclusive Business Management Agreement ("EBMA") is the most natural construction of its terms. I do not believe that their interpretation is the only one to which the language of the EBMA is "reasonably susceptible." *Wolf v. Superior Court*, 8 Cal. Rptr. 3d 649, 655–56 (Ct. App. 2004). Therefore, I respectfully dissent.

In California, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone . . . subject . . . to the other provisions of [the California Code of Civil Procedure]." Cal. Civ. Code § 1639. However, "[courts] are permitted to consider extrinsic evidence when interpreting [a contract] as a matter of law if the language of the provisions is reasonably susceptible to the interpretation of the party proffering the evidence." *Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. California*, 618 F.3d 1066, 1075 (9th Cir. 2010); *see also* Cal. Civ. Code § 1647 ("A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates"). The goal is not to determine the objective meaning of the terms of the contract but to determine the "actual intent" of the contracting parties. *See Hess v. Ford Motor Co.*, 41 P.3d 46, 54 (Cal. 2002) ("The goal of contract law is to ascertain the parties' actual intent at the time they made the

1

contract.  This intent is necessarily subjective." (citation omitted)).  "[S]ubjective opinions about" the meaning of the terms of a contract are unreliable, but "objective facts surrounding the negotiations" of those terms are valid things to consider when interpreting a contract.  *Id*.  Here, OWLink's case largely rises and falls with the credibility of its president, Paul Tzeng ("Tzeng").

Tzeng testified that he insisted that the parties include section 2.4 to ensure that Cypress would not eliminate that OWLink's participation in the agreement, an understanding he says that Cypress shared.  He did not state that section 7.5 functioned as a cap on damages.  Moreover, Tzeng testified that Cypress agreed with his view that the EBMA would terminate when Crestron actually ceased purchasing products from Cypress.  None of these statements are undisclosed intentions or subjective understandings of the contract; rather, Tzeng testified to the parties' shared understanding of the contract, of which he had firsthand knowledge.

Undoubtedly, Tzeng's testimony may be characterized as self-serving. However, Cypress had an opportunity to question Tzeng about the veracity of his statements, challenge the basis of his knowledge, and present evidence that countered his narrative.  The jurors were in the best position to judge Tzeng's credibility.  They had the best vantage point to determine if Tzeng was an honest entrepreneur who had been betrayed by a company that did not live up to its word,

2

a snake oil salesman attempting to get far more than what he bargained for, or something in between. Based on the verdict, it appears that the jury agreed with Tzeng's interpretation of the EBMA, and I fear my colleagues' view that the jury's interpretation was unreasonable too "lightly cast[s] aside the solemnity of the jury's verdict." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1015 (9th Cir. 2008). I respectfully dissent.

3